**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANGALA GARLAND, individually and on behalf of all others similarly situated, | | |
| Plaintiff, | | |
| v. | | CLASS ACTION |
| THE CHILDREN'S PLACE, INC. | | CASE NO. 1:23-cv-4899 |
| Defendant. | | |

**<u>THE CHILDREN'S PLACE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST
COUNSEL FOR PLAINTIFF ANGALA GARLAND</u>**

Defendant The Children's Place, Inc., by its attorneys, pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the inherent power of this Court, states as follows:

## I.
## INTRODUCTION

Without conducting any reasonable investigation, Plaintiff's counsel has recklessly filed a lawsuit in this Court asserting that Defendant's clothing products contain per- and polyfluoroalkyl substances ("PFAS") chemicals. Plaintiff's counsel does not simply attack a single product, but rather, all products at the heart of Defendant's business—i.e., all of its school uniforms. Defendant's school uniform category consists of more than 11 types of boys' garments and 14 types of girls' garments, in sizes ranging from 2T (toddler) to a child's 16 (XXL), and featured in a rainbow of colors.[1] Defendant's website currently shows over 1500 items available for sale in its "uniforms shop".[2] Plaintiff's counsel alleges "a civil class action brought on behalf of all persons who have purchased school uniforms designed, manufactured, promoted, and sold by Defendant The Children's Place (hereinafter, the 'School Uniforms')" and asserts that "Defendant The Children's Place designs, manufactures, markets, advertises, distributes, and sells the School Uniforms to consumers throughout the United States." (Dkt. 1 (Complaint), ¶¶ 1, 3.) Plaintiff's counsel alleges that Defendant's School Uniforms—categorically—are tainted and that the company has been dishonest with parents. In fact, it is Plaintiff's counsel that has been dishonest with this Court and the consuming public.

Plaintiff and her counsel filed the Complaint based on test results received from a third party laboratory. (Dkt. 1, ¶ 28.) Though Plaintiff referenced and relied upon this testing in her Complaint, no details were provided in the Complaint and the testing was not attached as an

---

[1] *See generally,* https://www.childrensplace.com/us/c/kids-school-uniform-shop.

[2] *Id.* (last accessed Sept. 28, 2023).

exhibit. However, upon request, Plaintiff's counsel provided Defendant with a copy of the lab report, and the results fail to support the allegations against Defendant. Plaintiff purchased at least 21 garments[3] from Defendant, but Plaintiff's counsel tested just two of them (both of which had been worn and washed for months). The test results for one item showed that it was PFAS-free. The results for the second one purported to show extremely low, trace levels of one PFAS chemical, but the lab flagged the result with two qualifiers that indicated that the test result was unreliable. Under the circumstances, Plaintiff's counsel should have continued its investigation – but they did not. At a bare minimum they were obliged to retest the one item to remove the qualifiers that their own lab said made the results unreliable and test a new version of the item that had not been repeatedly washed or exposed to months of contamination.

Instead, based on nothing more than an acknowledged suspect test result for one worn shirt containing a barely detectable amount of one type of PFAS chemical, Plaintiff and her counsel filed a complaint broadly disparaging *all* of Defendant's "School Uniforms"— i.e., disparaging over 1500 products including the one that tested PFAS-free. On top of that, Plaintiff's counsel made a public statement to the media to try to build pressure against Defendant's brand during its most important retail season—the "back-to-school" season—all while knowing about the negative test result and flaws of the single positive result. Finally, after being alerted to the flaws in their case and false allegations, both by way of service of the Rule 11 motion and by service of Defendant's own test results that show that all of the product types

---

[3] Plaintiff alleges that she purchased 8 multipack items. (Dkt. 1, ¶ 22.) Multipacks can have as few as two, and as many as 20, items. Here, we have assumed Plaintiff purchased multipacks containing two items.

purchased by Plaintiff contain no PFAS chemicals[4], , they refused to dismiss this action.[5]  Such conduct violates Rule 11, and accordingly, Defendant asks the Court to sanction Plaintiff's counsel.

## II.
## STATEMENT OF FACTS

In preparation for a new school year, in 2022, Plaintiff Garland purchased for her minor son short- and long-sleeved polo shirts, several styles of pants and shorts, a sweater, and hoodies manufactured by Defendant.  (Dkt. 1, ¶ 22.)  All told, Plaintiff purchased at least 23 items of clothing from Defendant.  Plaintiff's son wore these items throughout the entire 2022-2023 school year.  (*Id.*, ¶ 23 (Fall, Spring, and Summer 2022-2023 semesters).)  Plaintiff does not allege that the clothing did not endure the arts and crafts, recesses, or other activities of a four year-old school boy.  Plaintiff does not allege that her son was harmed by wearing the clothing.

After her son had worn the clothes during the school year, and after repeated rounds of laundering, Plaintiff alleges she provided the School Uniforms she purchased to a third-party laboratory and had the laboratory test these garments for the presence of PFAS.  (Dkt. 1, ¶¶ 22, 28.)  Plaintiff alleges that the testing methodology used was "the industry standard" and that the lab found PFAS chemicals in the School Uniforms "at material and above-trace amounts".  (*Id.*,

---

[4]  *See* Cardon Decl., Ex. B.

[5]  On the eve of receipt of this Motion, Plaintiff's counsel emailed that they had conducted additional testing that supported their claims, but declined to provide the results, any information about what they tested, or how they tested it. (Cardon Decl., ¶ 4).  They did not state whether the same or different items were tested, whether unworn controls were tested, or what the testing sought to identify. (*Id.*)  In any event, whatever this mystery testing shows, it does not rehabilitate the filing of this action without first conducting a sufficient investigation.  Plaintiff should have not filed the action, or should have dismissed it upon The Children's Place's request and refiled if a sufficient subsequent investigation supported such.  It was the knowledge of Plaintiff and her counsel at the time of filing that is relevant to this analysis.  *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987) ("The violation of Rule 11 is complete when the paper is filed.").

¶¶ 29-30.)  Plaintiff then sued Defendant, asserting that she "did not receive the benefit of her bargain" when she purchased Defendant's School Uniforms due to the presence of PFAS.  (*Id.*, ¶ 31.)  She also alleges that Defendant's clothing categorically contains "harmful chemicals" that pose a health danger to children.  (*Id.*, ¶¶ 5-6.)  Plaintiff asserts claims for violation of Illinois' Consumer Fraud and Deceptive Business Practices Act (85 Ill. Comp. Stat. 505/1-505/12), fraudulent concealment, breach of implied warranty, and unjust enrichment.  Plaintiff's counsel then gave interviews to the press about the lawsuit, proclaiming that Defendant's alleged conduct was "extremely risky".[6]

Plaintiff and her counsel had no basis for making these claims or for slandering Defendant in this manner.

Although not attached to the Complaint, Plaintiff's counsel provided Defendant with a copy of the sole lab report on which they base this suit.  (*See generally* Ex. A. to Cardon Decl.) According to the lab report, Plaintiff provided just two articles of clothing to her counsel in March 2023 out of the dozens she purchased from Defendant: one pair of pants and one shirt. (*Id.*, p. 9.)  There is no information about how she transmitted the garments to her counsel. Several months later, in June 2023, her counsel sent the garments to Merit Laboratory, Inc. ("Merit"), along with 12 other garments from other retailers.  (*Id.*, p. 10.)  There is no information about how Plaintiff's counsel maintained the garments prior to submitting them to Merit.  For instance, Plaintiff's counsel could have mixed or mingled Defendant's articles of clothing with the 12 others that it submitted to the lab in June 2023.  (*Id.*)  All of these missing

---

[6]  https://www.prnewswire.com/news-releases/class-action-lawsuit-accuses-the-childrens-place-of-selling-pfas-laced-school-uniforms-301887987.html.

datapoints are important because—as Plaintiff alleges—PFAS chemicals are known to migrate and cross-contaminate other items with which they come into contact. (*See, e.g.*, Dkt. 1, ¶ 36.)

Merit tested the garments using the ASTM D7968-17M test method. This test is generally used for soil testing and was modified by Merit without Merit providing any details on how it modified the test or whether the modified test was appropriate for detecting PFAS in clothing. (Ex. A, p. 4.) In addition, the report indicates that Merit was not accredited to test for the PFAS chemicals at issue by the National Environmental Laboratory Accreditation Program ("NELAP"), which is the accreditation program that certifies what analyses a lab is accredited to perform. (*Id*., p. 2.) Accordingly, there is absolutely no basis for Plaintiff and her counsel to assert that "industry standard" testing was conducted.

Merit tested one pair of pants and one shirt for 28 PFAS chemicals. It ***did not detect any*** PFAS chemicals on the pants and ***did not detect*** 27 of the PFAS chemicals on the shirt. (*Id.*, p. 6-7.) It claims to have detected a single PFAS chemical known as N-methyl perfluorooctanesulfonamidoacetic acid or "N-MeFOSAA" at an extremely low trace amount (the reporting limit for this chemical is 200 nanograms per kilogram or parts-per-trillion and it was allegedly detected at 260 part-per-trillion, or **60 parts per trillion** over the detection level). Critically, however, even that supposed "detection" was called into question by the laboratory itself. Specifically, Merit ***flagged and qualified*** that result as an "estimated result due to extraction run outside of holding time" and because there was "matrix interference with [its] internal standard." (*Id.* (flags "I" and "G").) It does not appear that any follow up was conducted to address these irregularities in the testing or evaluate the extent to which they invalidated the result.

Further, PFAS chemicals are found in many household products, including laundry detergent and stain removers to improve their effectiveness, and in the water supply. (*See, e.g.*, https://purewaterblog.com/avoiding-pfas-what-products-contain-pfas/ and https://time.com/6281242/pfas-forever-chemicals-home-beauty-body-products/.) Plaintiff admits that PFAS chemicals "found in apparel and textiles [are] known to migrate during laundering." (Dkt. 1, ¶ 36.) Even if the test result for this chemical were valid, its presence at such an extremely low, trace level on the shirt alone after months of wear and laundering cannot credibly be attributed to the shirt at the time of sale as opposed to contamination that occurred during wear or repeated laundering.

Defendant's hypothesis has since been validated: In response to the Complaint, Defendant had a third-party laboratory test each of the product types that Plaintiff identified in her Complaint as items she purchased. Defendant asked that the laboratory test for PFAS using total fluorine tests. This is because PFAS molecules are comprised of a chain of fluorine and carbon atoms chemically bonded together, so a total fluorine test is an effective screening tool to detect the potential presence of PFAS compounds. Specifically, if high total fluorine is detected, further specific testing for PFAS compounds may be warranted to determine whether PFAS are present and, if so, what compounds, but if total fluorine is not detected, PFAS compounds are not present. All of the tests were "non-detect" for total fluorine, confirming that Defendant does not add or otherwise introduce PFAS chemicals into its school uniform items of clothing, belying Plaintiff's allegations. (Cardon Decl., Ex. B.)

On August 16, 2023, Defendant shared its analysis of Plaintiff's test results with Plaintiff's counsel and gave Plaintiff notice of its intent to file a Rule 11 motion if Plaintiff did not dismiss its action by August 22, 2023. (Cardon Decl., ¶ 3.) Defendant waited more than a

week to give Plaintiff's counsel more time to reevaluate the claims, and then served the instant Rule 11 motion. (*Id.*, ¶ 5.) During the safe harbor period provided by Rule 11, Defendant received its full complement of PFAS testing and provided that to Plaintiff's counsel. (*Id.*, ¶ 6.) In short, Defendant has waited the requisite 21 days since serving its Rule 11 motion, and Plaintiff has not dismissed the action. Accordingly, Defendant now brings its motion for sanctions.

### III.
### <u>PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED UNDER RULE 11</u>

At the time they filed the Complaint, Plaintiff's counsel knew that one item of Defendant's clothing had tested negative for PFAS and that the single positive test result was highly questionable. Plaintiff's counsel should be sanctioned under Rule 11 because they knew (i) they had insufficient evidence to allege that all of Defendant's School Uniforms categorically contain PFAS chemicals, and therefore there was no basis for alleging that all of Defendant's School Uniforms are harmful to children, "unsafe," "worthless," or overpriced [Dkt. 1, ¶ 8]; (ii) they had insufficient evidence to allege that Defendant knowingly or willfully concealed information from consumers about its School Uniforms [*id.*, ¶ 7]; (iii) they had insufficient information to allege that the School Uniforms contained PFAS "at the point of sale to the public," [*id.*, ¶ 55]; (iv) they had insufficient evidence to allege that Defendant treats or exposes its School Uniforms to PFAS "during the manufacturing process" [*id.*, ¶ 93]; and (v) counsel's lab report shows on its face that the testing procedure used was not industry standard and the results obtained on the one positive test are scientifically suspect and unreliable.

Rule 11 provides that, "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after a reasonable

inquiry under the circumstances: [ ] the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). "A court may impose sanctions under Rule 11 if, among other things, a lawsuit is not well grounded in facts." *Portman v. Andrews*, 249 F.R.D. 279, 282 (N.D. Ill. 2007) (J. Kennelly) (awarding sanctions). A frivolous claim is "baseless and made without a reasonable and competent inquiry." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir.1998); *see also City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175 (N.D. Ill. 2014) (awarding sanctions because attorney did not conduct sufficient pre-suit inquiry). The sanctions inquiry "is an objective one: whether the party should have known that his position was groundless." *Portman*, 249 F.R.D. at 283. "The violation of Rule 11 is complete when the paper is filed." *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987) (finding also that "splendid conduct of the litigation does not excuse an established violation" and "[it] s not permissible to file suit and use discovery as the sole means of finding out whether you have a case.").

The so-called "investigation" conducted pre-filing by Plaintiff's counsel returned no evidence supporting the sweeping and brand-damaging allegations contained in the Complaint. The lab report identified a single PFAS chemical allegedly found in Plaintiff's shirt at an extremely low, trace amount, but the lab itself flagged the result as unreliable. Further, PFAS chemicals are found in soaps, laundry detergents, the water supply, and numerous other places throughout the environment – each of which the shirt came into contact with repeatedly over the course of the year Plaintiff's son wore it and Plaintiff laundered it. As ASTM D7968-17 itself states, PFAS are "ubiquitous in the environment." Finally, the lab—which was not even accredited for the test it performed—did not utilize an industry standard test in obtaining its

single "detection." As a consequence, the lab results are scientifically unreliable and cannot reasonably support the allegations made by Plaintiff's counsel.

Under these circumstances, it was incumbent on Plaintiff's counsel to continue investigating its contentions prior to filing any papers with the Court. However, it did not, and faced with Defendant's Rule 11 letter and own testing, counsel still would not dismiss the Complaint. This conduct, coupled with Plaintiff's counsel's media statements disparaging Defendant's entire brand and line of School Uniforms during its key back-to-school season, reflects at best a reckless disregard of due process, and at worst, an overt intent to harm Defendant and induce Defendant to pay a large settlement. Rule 11 is meant to prevent such conduct.

## IV.
## CONCLUSION

Based on the foregoing, Defendant respectfully requests that this Court sanction Plaintiff's counsel pursuant to Rule 11, 28 U.S.C. § 1927, and this Court's inherent powers. Specifically, Defendant requests that the Court dismiss Plaintiff's suit, compensate Defendant for its legal fees and expenses incurred in investigating Plaintiff's claims and filing the Rule 11 motion, and restrict Plaintiff and her counsel from making any other baseless claims against Defendant.

Date:  September 28, 2023       Respectfully submitted,

/s/ *P. Craig Cardon*
P. Craig Cardon, Cal. Bar No. 168646(*pro hac vice*)
Jeffrey J. Parker, Cal. Bar No. 155377(*pro hac vice*)
Abby H. Meyer, Cal. Bar No. 294947 (*pro hac vice*)
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
1901 Avenue of the Stars, Suite 160
Los Angeles, California 90067-6055
Telephone: (310) 228-3700
Facsimile:  (310) 228-3701
CCardon@sheppardmullin.com
JParker@sheppardmullin.com
AMeyer@sheppardmullin.com

David M. Poell (ARDC #6302765)
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
321 N. Clark, 32nd Floor
Chicago, Illinois 60654
Telephone:  (312) 499-6300
Facsimile:  (312) 499-6301
DPoell@sheppardmullin.com

*Attorneys for The Children's Place, Inc.*