**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANGALA GARLAND, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

THE CHILDREN'S PLACE, INC.

      Defendant.

CLASS ACTION

CASE NO. 1:23-cv-4899

Hon. Judge Matthew F. Kennelly

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S</u>**
**<u>MOTION FOR SANCTIONS AGAINST COUNSEL</u>**

### I. Introduction

Federal Rule of Civil Procedure 11 ("Rule 11") imposes on any attorney filing, submitting, or advocating in support of a pleading or written motion, the affirmative duty to certify that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

For all its sound and fury, Defendant's Motion for Sanctions ("Motion") provides no basis under Rule 11 for sanctioning Plaintiff's counsel for filing the above-captioned case. Instead, Defendant's Rule 11 motion is a house of cards that collapses under the weight of its own false underpinning. At the time of filing, the factual allegations in Plaintiff's Complaint had sufficient

evidentiary support as set forth under F.R.C.P. 11(b)(3), including: (1) independent laboratory testing of school uniforms manufactured by Defendant and purchased by Plaintiff for her minor child, which confirmed the presence of polyfluoroalkyl substances ("PFAS"); (2) independent scientific publications regarding the presence of PFAS in children's clothing and school uniforms, including clothing manufactured and sold by Defendant; and (3) robust research on the dangers PFAS on children and adults and the relationship between PFAS compounds and Defendant's school uniforms. Defendant may seek to challenge Plaintiff's testing methodology, analysis, literature, or experts, and it will have ample opportunity to do so. Rule 11, however, is not the proper forum for such arguments.

In seeking sanctions, Defendant ignores not only the factual support cited in the Complaint, but also the standard for sanctions under Seventh Circuit precedent, which places on Defendant an extremely high burden to show that Plaintiff had "callous disregard for governing law or the procedures of the court." *Mathews v. Brown*, 2017 WL 4402597, at *2 (W.D. Wis. Oct. 2, 2017) (citing *Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992)). Defendant cannot do so, and denial of its Motion is warranted.

## II. Factual and Procedural Background

Following a review of studies commissioned and published by third parties, and independent third-party laboratory testing of school uniform products manufactured by Defendant and purchased by Plaintiff, Plaintiff filed this Complaint on July 27, 2023, alleging a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act (85 Ill. Comp. Stat. 505/1-505-12), fraudulent concealment, breach of implied warranty, and unjust enrichment. Dkt 1; Ex. A (Geisler Declaration) at para. 4. Plaintiff alleged that Defendant's school uniforms were contaminated with harmful chemicals, known as PFAS. To support those allegations, Plaintiff

cited her own testing performed by an independent third-party lab as well as multiple scientific publications.[1] Dkt. 1.

Plaintiff, as the master of her Complaint, was under no duty to attach such studies and materials to her pleadings. Indeed, to the dismay of many defendants, plaintiffs routinely rely on studies which are not attached to or detailed in their pleadings as a basis for their claims when initiating litigation. Nevertheless, after requests by Defendant's counsel, which Plaintiff's counsel understood were for the confidential, nonpublic purposes of investigating and resolving the action, Plaintiff's counsel sent the initial test results to Defendant via an email with the subject line "***Confidential Settlement Communication***." Ex. A at para. 6. Defendant wasted little time spinning the lab results, which showed its products tested positive for PFAS, for use as the centerpiece of its Sanctions Motion once Plaintiff made clear she would not dismiss her Complaint. Still, Plaintiff engaged in good faith with Defendant on several occasions, including over Zoom.

Plaintiff continued her investigation regarding the presence of PFAS in Defendant's products after the filing of her Complaint and provided two different independent laboratories with several of Defendant's *unworn* and *unwashed* uniforms in original packaging. *Id.* at paras. 12-13. While Plaintiff awaited the results, Defendant continued to threaten its forthcoming Sanctions Motion based in part on the positive lab result it deemed unreliable. *See id.* at para. 7-8. Yet the additional testing confirmed the presence of PFAS compounds in ten of the unworn, unopened and unwashed products tested. *Id.* at para. 14. While Plaintiff is loath to go down the rabbit hole of disclosing the specifics of the testing, both fluorine and specific PFAS compounds were detected

---

[1] Plaintiff's pre-filing testing initially focused on the testing on product that she personally had purchased for wear by her minor child. As this Court has likely seen, the current strategy du jour among the defense bar challenging pleadings in consumer cases often focuses on the plaintiff's standing. To fortify against such an attack and verify that she had indeed purchased an affected product, Plaintiff sent her own, albeit worn, items for testing.

in the tested samples. *Id.* Given that there is no scientific evidence to support any safe level of such compounds for children, Defendant's unwillingness to collaborate to resolve this issue is, to put it mildly, disappointing.

Defendant made clear that it will not accept as reliable any lab results unfavorable to its position. On September 6, 2023, after Plaintiff offered to continue discussions toward resolution, Defendant served Plaintiff's counsel with an additional letter and enclosed a service copy of Defendant's Motion for Sanctions against Counsel. *Id.* at para. 7. The letter again requested that Plaintiff voluntarily dismiss her Complaint arguing that Plaintiff's Complaint lacked sufficient basis to proceed and warranted sanctions. *Id.* at para. 8. On September 20, 2023 at approximately 11:00 p.m. CST, the night before the parties' first status conference, Defendant what it purports is testing conducted by a foreign lab without any notice that the results were forthcoming. *Id.* at para. 9. On September 28, 2023, Defendant filed its Motion for Sanctions. Dkt. 18; Ex. A at para. 10.

### III. Legal Standard

> Rule 11(b) requires an attorney to certify, to the best of his or her knowledge, that any pleading that the attorney presents to the court is not being presented for any improper purpose—such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation—and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

*In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 859–60 (N.D. Ill. 2015); Fed. R. Civ. P. 11(b). Sanctions do not inevitably follow even if a court rules that a party is "wrong on the law." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Servs.*, Inc., 9 F.3d 1263, 1269 (7th Cir.1993). Rather, the test is whether "competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in their complaint." *Id.* at 1269. The Seventh Circuit applies a standard of "objective reasonableness" by considering whether, at the time of the relevant filing, "a reasonable attorney would have or should have known" that their

-4-

conduct violated Rule 11. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, 2011 WL 2491427, at *1 (E.D. Wis. June 22, 2011) (internal citation omitted); *see also Corley v. Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1014 (7th Cir. 2004) (observing that "the focus in Rule 11 sanctions is on what counsel knew at the time the complaint was filed). Defendant's motion fails these criteria.

Courts resolve all doubts against issuing sanctions in favor of the non-moving party. *Swanson v. Vill. of Lake in the Hills*, 1988 WL 131541, at *1 (N.D. Ill. Dec. 1, 1988). Sanctions are to be imposed sparingly, as they can "'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel." *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) (quoting *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994)). The moving party faces a high burden because "courts must take care to impose sanctions only to protect the court and parties against 'callous disregard for governing law or the procedures of the court.'" *Mathews v. Brown*, 2017 WL 4402597, at *2 (W.D. Wis. Oct. 2, 2017) (citing *Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992)). To forestall such tactics, a court should apply Rule 11 sanctions only "with utmost care and caution." *FDIC v. Tefken Construction and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1988). Defendant's Motion exemplifies the need for courts to carefully evaluate the propriety of such a powerful penalty.

### IV. Argument

#### A. The allegations in Plaintiff's Complaint are supported by facts developed through investigation.

The Seventh Circuit declines to impose Rule 11 Sanctions where there is at least *some* minimal amount of evidence to support the claims. *Lebovitz v. Miller*, 856 F.2d 902, 905-08 (7th Cir. 1988) (emphasis added) (reversing Rule 11 sanctions as an abuse of discretion because counsel's inferences drawn from facts constituted at least some evidence supporting claims); *see*

*also Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 230 (7th Cir. 1990) (holding that facts only "weakly characterized as evidence" still meet the Rule 11 threshold). Plaintiff easily exceeds this low evidentiary threshold.

Here, the core factual allegations of Plaintiff's Complaint are well-supported by evidence developed through independent third-party laboratory testing and research into the dangers of PFAS compounds and their connection to Defendant's school uniforms. In support, Plaintiff cited to the Department of Health and Human Services' National Toxicology Program as well as to the Ministry of Environment and Food for the Danish Environmental Protection Agency for the following proposition:

> Humans can be exposed to PFAS in a variety of ways, including through ingestion, inhalation, and skin absorption.[2] In addition, PFAS found in apparel and textiles is known to migrate during laundering, which releases those chemicals into waterways.[3]

In addition, Plaintiff cited to an announcement by the U.S. Environmental Protection Agency and a study published by the Sierra Club, stating:

> On June 27, 2022, after the US EPA announced a new health advisory warning the public of the extreme danger to human health from PFAS, the Sierra Club published research testing children's textile products from major retailers, including The Children's Place. That research indicated that Defendant's pants tested positive for total fluorine, an indicator of the presence of PFAS chemicals.[4]

This research alone was sufficient to provide *some* evidence to support claims. *See Lebovitz*, 856 F.2d at 905-08. Based on the Complaint alone, Defendant was aware of this research cited by

---

[2] *Per- and Polyfluoroalkyl Substances (PFAS)*, National Toxicology Program, U.S. Department of Health and Human Services (last accessed Oct. 17, 2023), https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html.
[3] https://www2.mst.dk/Udgiv/publications/2015/04/978-87-93352-12-4.pdf
[4] https://www.sierraclub.org/sierra/how-lounge-pfas-free-bras-while-your-partner-puts-kids-less-toxic-clothes-car-seats-strollers. *See also* Dkt. 1 at para. 38-42 (discussing additional research finding that short-chain PFAS chemicals, which are currently widely used in the textile industry, have been found to have the same harmful health impacts as their long-chain counterparts).

-6-

Plaintiff. Yet, as discussed below, Plaintiff did not file her Complaint until after she had conducted her own independent testing and research. Defendant's mere disagreement with or self-serving dislike of Plaintiff's test results do not remotely justify the issuance of Rule 11 sanctions.

### B. Plaintiff properly filed this case following reasonable, good faith investigation.

The Seventh Circuit has repeatedly held that parties who make a reasonable inquiry into the facts under the circumstances cannot be sanctioned. *See e.g.*, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 584 (7th Cir. 2019) (reversing Rule 11 sanctions as an abuse of discretion where counsel's inquiry was reasonable under the circumstances, whether or not it led to the correct conclusion); *Lebovitz*, 856 F.2d at 905-08 (same). "Rule 11 cannot be allowed to thoroughly undermine zealous advocacy," or to "chill" an attorney's reasonable pursuit of factual or legal theories. *Kraemer v. Grant Cnty.*, 892 F.2d 686, 690 (7th Cir. 1990); *see also Corley*, 388 F.3d at 1014 (The fact that "the underlying claim turn[s] out to be groundless does not necessarily mean that Rule 11 sanctions are appropriate (much less required).").

Here, Plaintiff and her counsel engaged in reasonable "prefiling research into the facts of [this] case." *Kraemer*, 892 F.2d at 690. For example, Plaintiff relied upon published scientific research to support her claims. Ex. A at para. 4. Additionally, as stated in the Complaint:

> 28. Plaintiff sought independent third-party testing to determine whether the School Uniforms purchased from The Children's Place contained PFAS.
>
> 29. The method used in Plaintiff's independent testing is the industry standard for detecting and determining whether materials, such as the School Uniforms, comply with quality and safety standards.
>
> 30. Plaintiff's independent testing from a third-party lab found PFAS chemicals in Defendant's School Uniforms at material and above-trace amounts which were and are material to Plaintiff, consumers, and Class Members.

*See* Dkt 1 at paras. 28 – 30; *see* Ex. A at paras. 2-3.

Indeed, Plaintiff's counsel had two school uniform items worn by her minor child tested

by an independent third-party lab using industry-standard testing. Ex. A at paras. 2-3. As Defendant acknowledges, Defendant's shirt tested positive for 260 ng/kg of N-MeFOSAA, exceeding the reference level of 200 ng/kg. *Id.* at para. 3. According to the Environmental Working Group, "NMeFOSAA and other perfluorinated chemicals can cause serious health effects, including cancer, endocrine disruption, accelerated puberty, liver and immune system damage, and thyroid changes" and can accumulate in people.[5] Defendant cites to the presence of PFAS in the water supply as a potential sources of the PFAS found in its school uniform; but only nine utilities nationwide have reported N-MeFOSAA in drinking water, none of which were located in Illinois.[6]

Importantly, as Plaintiff has alleged, "young children who wear Defendant's School Uniforms are uniquely vulnerable and susceptible" to the adverse health effects associated with PFAS "due to their low body weight, sensitive development, prolonged periods of wear during the school week, and direct oral exposure due to frequent hand-to-mouth behaviors."[7] Indeed, scientific experts in the field of pharmacology and toxicology explain that "children experience adverse health outcomes at *lower* internal concentrations [of PFAS]"[8] than adults, making the positive test result of 260 ng/kg of N-MeFOSAA in Plaintiff's product purchased from Defendant even more significant and supportive of Plaintiff's allegations.

Defendant next improperly bypasses *Daubert* to attack the test results as unreliable. After Defendant provided Plaintiff with a service copy of its Motion for Sanctions, Plaintiff consulted with an expert, Dr. Kenneth Rudo, a toxicologist formerly with the North Carolina Division of Public Health with extensive PFAS experience who holds both a master's degree and doctoral degree in toxicology. Ex. A at para. 15. His affidavit is attached to this Response Brief as Exhibit

---

[5] https://www.ewg.org/tapwater/contaminant.php?contamcode=E311.
[6] *Id.*
[7] Dkt. 1 at para. 6.
[8] *Id.* at para. 47 (emphasis added).

-8-

B. Discussions with Dr. Rudo confirmed that Plaintiff's understanding of the testing results was accurate, and the filing of the Complaint was warranted. *See* Ex. B at para. 6. Dr. Rudo also explained to Plaintiff's counsel that "[c]ontaminated clothing," like Defendant's uniforms, is among "the major sources of human exposure to PFAS." *Id.* at para. 13. However, while discussions with Dr. Rudo demonstrate the legal and factual plausibility of Plaintiff's Complaint, Plaintiff did not, and still does not, believe Defendant should be permitted to conduct *Daubert*-level review of Plaintiff's expert at the pleading stage of the litigation.

Finally, out of a "serious and studied [regard] for the orderly process of justice," Plaintiffs' counsel went so far as to conduct *additional* testing on unworn, unwashed, and unopened school uniforms to ensure the plausibility of Plaintiff's allegations. *Walter v. Fiorenzo*, 870 F.2d 427, 433 (7th Cir. 1988) (internal citations and quotations omitted) (emphasis added) (Sanctions should not be issued unless an attorney has engaged in a "serious and studied *disregard* for the orderly process of justice" or has otherwise filed a claim without a plausible legal or factual justification.). Plaintiff's counsel were committed to amend or dismiss the Complaint, if necessary. To address the concerns raised in Defendant's Motion for Sanctions, Plaintiff's counsel purchased additional, unworn and unwashed school uniforms directly from The Children's Place's website and its Amazon storefront. Ex. A at 12. Those products were delivered to two separate independent labs in Defendant's original packaging and were tested by scientists at those two separate independent labs using industry standard testing. *Id.* at para. 13. Ten more of Defendants' school uniforms tested positive for specific PFAS substances and/or total fluorine (*Id.* at para. 14), which Defendants used in its own testing and referred to in its memorandum in support of its sanctions motion as "an effective screening tool to detect the potential presence of PFAS compounds." Dkt. No. 19 at p. 6. Plaintiff intends to amend her Complaint to reference this additional testing in the

near future and will share the results of such testing in formal discovery if and when those results are sought by Defendant.[9]

As set forth above, Plaintiff and her counsel in this case reasonably, indeed extensively, investigated Plaintiff's claims before filing this case. Thus, the Court should deny Defendant's Motion.

### C.  Rule 11 is not an avenue to seek judgment on the merits of the case.

Defendant's Motion runs afoul of Rule 11 because it raises so-called arguments that should instead be raised in Rule 12, Rule 56, or *Daubert* motions. Courts in this District have found that Rule 11 cannot serve as an end-run around formal discovery or dispositive motion practice, as Defendant apparently seeks to do here.

> Rule 11 ordinarily should not be used as a proxy to litigate the merits of a case. If claims lack merit on their face as a matter of law, then a motion to dismiss is appropriate. If a plaintiff does not have enough evidence as a matter of law to prove his claims, that determination usually is made toward the end of the litigation or, at a minimum, after discovery has been completed in the context of a motion for summary judgment.

*Lanphere v. 1 Corp.*, No. 10 C 4774, 2012 WL 1965436, at *3 (N.D. Ill. Apr. 3, 2012), report and recommendation adopted as modified, No. 10 C 4774, 2012 WL 1966010 (N.D. Ill. May 31, 2012). Any acceptance of Defendant's misreading of Rule 11 would create perverse incentives for future litigants to misuse Rule 11 as "a proxy to litigate the merits of a case." *Id.* Nor is Rule 11 a vehicle to extract dismissals without first testing the sufficiency of underlying allegations. *See id.*

Indeed, the Seventh Circuit cautioned that Rule 11 should not be used as "a battleground for satellite controversies where, in effect, the tail would wag the dog, potentially diverting judicial resources from the prompt disposition of the merits of controversies." *Harlyn Sales Corp.*, 9 F.3d

---

[9] While Plaintiff is reluctant to share such testing with Defendant given its course of conduct in this litigation, Plaintiff would be willing to provide testing for in *camera* review.

at 1269. Accordingly, this Court should resist Defendant's demand that it summarily adjudicate Plaintiff's claims through Rule 11.

> **D. Defendant's Motion should be denied because it has egregiously misused the content of confidential settlement communications as the keystone for its Motion for Sanctions.**

Finally, litigants must not be rewarded for converting confidential settlement discussions into the basis for a sanctions motion, as Defendant has done here. Plaintiff shared its test results in good faith as a part of confidential settlement negotiations given Defendant's representation that it wanted to get to the bottom of potential PFAS contamination in its products. *See* Ex. A at para. 6. Defendant could not resist, however, making the results the centerpiece of its push for sanctions even as the results were PFAS *positive*. As the United States District Court for the District of New Jersey recently observed:

> In light of the strong policy favoring the settlement of disputes and the candid communications that must happen to achieve those ends, it is troubling to say the least that the Court needs even to say that parties and their counsel ought to keep confidential settlement communications confidential. Regardless whether it violated the explicit terms of a court order, agreement, or positive law, [Defendant's] attorneys' public disclosure of settlement-related communications [is] inappropriate, irresponsible, contrary to well-accepted practice, and beneath the dignity of sophisticated counsel engaged in complex federal civil litigation.

*Cambria Co. LLC v. Hirsch Glass Corp.*, No CV2110092MASJBD, 2023 WL 6387680, at *4 (D.N.J. Sept. 29, 2023). Defendant's conduct warrants the same concerns.

Now, Plaintiff has conducted a second round of testing at her expense, which further confirms her position and which Defendant can seek through formal discovery. At this stage, the fact that Plaintiff: 1) conducted testing prior to filing the Complaint; 2), conducted additional testing in good faith response to communications with Defendant; and 3) consulted with an expert witness is more than enough to prove that Defendant's Motion lacks any legal basis and should be denied.

-11-

## V. Conclusion

Plaintiff and her counsel fully complied with Rule 11. Defendant's Motion is an abuse of Rule 11 and its underlying purposes. At best, Defendant's Motion is an attempt to get this Court to rule on the merits of the case. At worst, Defendant's Motion is a tactic to harass, embarrass or dissuade the Plaintiff from moving forward with her case. The Motion should be denied.

Dated: October 17, 2023.


Respectfully submitted,


By: */s/ E. Samuel Geisler*
E. Samuel Geisler (6305996)
Bryan F. Aylstock, Esq.
D. Nicole Guntner, Esq.
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ**
sgeisler@awkolaw.com
baylstock@awkolaw.com
nguntner@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 850-916-7449

Marcus J. Bradley, Esq. (174156)
Kiley L. Grombacher, Esq. (245960)
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

*Counsel for Plaintiff and the Class*