**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ANGALA GARLAND and JOELIS** ) | |
| **SALDANA, individually and on behalf of** ) | |
| **All others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 23 C 4899** |
| ) | |
| **THE CHILDREN'S PLACE, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Angala Garland and Joelis Saldana filed suit individually and on behalf of a

proposed nationwide class against The Children's Place, Inc. (TCP) for alleged

violations of the Illinois Consumer Fairness Act (ICFA), the Florida Deceptive and Unfair

Trade Practice Act (FDUTPA), fraudulent concealment, and unjust enrichment.[1]  The

plaintiffs allege that TCP's school uniform products contain polyfluoroalkyl substances

(PFAS), which plaintiffs allege "are a known safety hazard to children and to the

environment."  Am. Compl. ¶ 3.  The plaintiffs assert that, had TCP disclosed that its

school uniform products contained PFAS, they would not have purchased the products

or would have paid less for them.  TCP has moved to dismiss all of the plaintiffs' claims

for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to

state a claim under Rule 12(b)(6).  For the following reasons, the Court concludes that

---

[1] The plaintiffs also asserted a claim for breach of implied warranty (count 4), but they
have agreed to dismiss that claim.  *See* Pls.' Resp. at 8 n. 6.

1

the plaintiffs have Article III standing but have failed to state a claim.

## Background

Garland and Saldana purchased multiple school uniform products from TCP for their children.  Garland, an Illinois resident, later "sought independent third-party testing of two School Uniform items" that her child had worn.  Am. Compl. ¶ 33.  Garland alleges that one shirt "tested positive for N-MeFOSAA, a PFAS substance."  *Id.* ¶ 15.  Saldana, a Florida resident, sent thirteen school uniform items that her child had worn for third-party testing; she alleges that all thirteen "tested positive for total fluorine ('Total-F')."  *Id.* ¶ 16.  Although "Total-F" is not itself a PFAS, the plaintiffs allege that it is an "indicator" of the presence of PFAS.  *Id.*  Saldana's items were not tested "for specific PFAS chemicals."  *Id.* ¶ 57.  In addition, plaintiffs' counsel purchased thirty-four "unopened, unworn, and unwashed" TCP school uniform items.  *Id.* ¶ 50.  The plaintiffs allege that thirty items "tested positive for Total-F or for specific PFAS chemicals."  *Id.*

The plaintiffs assert that TCP "knew or should have known of the presence of PFAS in its School Uniforms, and the dangers associated with PFAS," either because of its own chemical testing protocols or because of various published articles about PFAS in apparel and school uniforms.  *Id.* ¶¶ 84, 86, 77.  The plaintiffs allege that they viewed TCP's "advertisements," "website" (the clothes were purchased online), and the "School Uniform tags" and did not see any disclosure that PFAS were present.  *Id.* ¶ 31.  In the plaintiffs' view, TCP's failure to disclose the presence of PFAS in its ads, website, and/or clothing tags amounted to "concealment," "deceptive representations," and "failure to sufficiently warn customers."  *Id.* ¶ 87.  The plaintiffs do not, however, provide any detail about the content or the gist of any communication from TCP that they

received in connection with their purchases.

The complaint identifies two specific statements by TCP that the plaintiffs allege are misleading, although they do not allege that they were aware of either statement before making their purchases. First, the plaintiffs cite to a statement in TCP's 2021 Annual Environment, Social and Governance Report that "we have developed chemical testing protocols as part of the quality and safety standards set for all of our products. During the development and production process, our products undergo testing to support compliance with regulatory requirements. This testing helps consumers have confidence that the products they purchase are safe. [. . .]" *Id.* ¶ 84. Second, TCP's corporate website states, "We have achieved our success on the basis of a very simple principle: Trust. Wherever and whenever our customers choose to shop with us, they trust The Children's Place . . . to provide quality, value and style." *Id.* ¶ 26.

TCP has moved to dismiss the plaintiffs' claims for lack of Article III standing and for failure to state a claim.

## Discussion

### A. Article III standing

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431. "At the pleading stage Article III standing is something to be alleged, not proved." *United States v. Funds in*

*the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013).

TCP raises four challenges to the plaintiffs' standing.  First, it argues that the plaintiffs lack standing because they have not suffered an injury in fact with respect to purchased products that did not test positive for PFAS.  Second, it argues that the plaintiffs lack standing because they have not suffered an injury in fact with respect to products they did not purchase.  Third, it argues that the plaintiffs "cannot represent a nationwide class because they do not have an injury in fact" in states other than Illinois (Garland) and Florida (Saldana).  Fourth, it argues that the plaintiffs do not have standing to pursue injunctive relief because they are now aware of the alleged PFAS contamination in TCP's school uniform products.

### 1.    Purchased products that were not tested or tested negative for PFAS

TCP first argues that the plaintiffs "assert claims as to all products they purchased, but lack standing for such a broad claim because not all of them contained PFAS."  Def.'s Mot. to Dismiss at 4.  Because "[t]he gravamen of the [first amended complaint] is that the School Uniforms are 'worthless or less valuable' due to the presence of PFAS," TCP argues that the plaintiffs can only satisfy the injury-in-fact requirement if "their purchased products contained PFAS."  *Id.* (quoting Am. Compl. ¶¶ 12–13).

The Court disagrees that it must scrutinize the plaintiffs' complaint product by product to determine whether the plaintiffs have alleged an injury in fact.  Both plaintiffs have alleged that they purchased at least one product that contained PFAS and that they would not have purchased (or would have paid less for) that product if they had known it contained PFAS.  The Seventh Circuit has held that this type of "financial

injury" is sufficient for Article III purposes.  *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial:  they paid more for the [product] than they would have, had they known of the risks the [product] posed to children.  A financial injury creates standing.").  The plaintiffs' single PFAS-contaminated purchase is sufficient to satisfy Article III's injury-in-fact requirement for this case.  Whether any *additional* products that the plaintiffs purchased contained PFAS may be relevant to other potential issues, such as the amount of damages the plaintiffs suffered and/or whether they can represent purchasers of those additional products in a class action.  But these questions are separate from the question of the Court's jurisdiction over the plaintiffs' individual claims.

TCP has suggested in its brief and at oral argument that the plaintiffs have not shown that *any* of the purchased items contain PFAS.  Specifically, TCP argues that Plaintiff Saldana's purchases were tested for "total fluorine" but not for PFAS.  The plaintiffs allege that total fluorine is an "indicator" that PFAS are present.  *See* Am. Compl. ¶¶ 46, 57, 75; Pls.' Resp. at 2.  TCP argues, in a footnote, that "total fluorine . . . is not as reliable of a proxy for PFAS" as testing of "total organic fluorine."  Def.'s Mot. to Dismiss at 4.  This is a factual dispute that the Court cannot resolve at the pleading stage.  At this stage, the Court credits Saldana's allegation that total fluorine is an indicator of PFAS.  *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022) ("The cornerstone at the motion to dismiss stage remains for district courts to treat all allegations as true and to draw all reasonable inferences in the plaintiff's favor.").

At oral argument, TCP also contended that the positive test result that Garland received was indicative of only a minor detectable amount and did not represent a

reliable result. TCP did not develop this argument in its brief, however, and therefore has forfeited the point for purposes of the motion to dismiss. At any rate, TCP's challenge to the reliability of the test results, like its challenge to the reliability of Saldana's total fluorine test, represents a factual dispute that cannot be resolved at this early stage. "At the pleading stage Article III standing is something to be alleged, not proved." *Funds in the Amount of $574,840*, 719 F.3d at 651. The complaint "contain[s] sufficient factual allegations" that, if "accepted as true," allege an injury in fact. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016).

In a footnote, TCP argues that the plaintiffs "also fail to satisfy the 'traceability' requirement [of Article III standing] because they tested products after their children had worn them" and the clothing therefore could be "cross-contaminat[ed]." Def.'s Mot. to Dismiss at 5 n. 3. But the Court concludes that it is at least plausible that the PFAS are traceable to TCP, particularly given that the plaintiffs allege that they conducted additional testing of unopened, unworn items ordered directly from TCP with positive results.

Finally, the parties do not dispute that the final requirement of Article III standing, redressability, is met. The Court agrees that the plaintiffs' alleged financial injury could be "redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423.

## 2. Unpurchased products

TCP argues along similar lines that the plaintiffs "lack standing to assert claims against all of [TCP's] School Uniform products" that they did not purchase. Def.'s Mot. to Dismiss at 5. As an initial matter, nothing in the complaint indicates that Saldana and Garland *themselves* seek relief for products they did not personally purchase. The

Court does not read the complaint to allege, for example, that Garland or Saldana seek to recover statutory damages for themselves for each and every product in TCP's school uniform line that might contain PFAS, regardless of whether they purchased the items. *Cf. TransUnion*, 594 U.S. at 427–28 (explaining that an unharmed plaintiff may not "merely seek[ ] to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)"). To the contrary, the complaint identifies the specific items that each plaintiff purchased. *See* Am. Compl. ¶¶ 27, 38.

The plaintiffs do, however, seek to represent a nationwide class of "[a]ll persons or entities in the United States who . . . purchased [TCP's] School Uniforms." *Id*. ¶ 91. This class definition is broad enough to include class members who purchased school uniform products that the plaintiffs did not.

In the Court's view, TCP's argument boils down to a challenge to the plaintiffs' ability to represent class members who purchased school uniform products that the plaintiffs themselves did not. This is not a standing argument; it is an argument on Rule 23 class certification. As another court in this district has explained on this issue:

> If the named plaintiff has standing, and if the putative class members would have standing in their own right, then there does not appear to be any Article III problem with the named plaintiff representing the class. If everyone suffered an injury, everyone would have standing. (Put aside the other standing requirements.)

> There might be a typicality problem, or a commonality problem, or an adequacy of representation problem under Rule 23 if the products are different in a meaningful way. A named plaintiff cannot represent people who sit in a different seat. Rule 23 requires the named plaintiff and the class members to be similarity situated, so meaningful differences can raise eyebrows at the class certification stage.

*Curtis v. 7-Eleven, Inc.*, No. 21 C 6079, 2022 WL 4182384, at *8 (N.D. Ill. Sept. 13,

2022).

The Court acknowledges that some courts have analyzed this issue as implicating Article III's injury-in-fact requirement. Even so, "the majority of courts that have considered the issue 'hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'" *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017) (collecting cases); *see also Curtis*, 2022 WL 4182384, at *8 ("Courts around the country have recognized a named plaintiff's standing to represent a putative class of purchasers who bought substantially similar products." (internal citations omitted)).

The allegations in the complaint in this case, if believed, are sufficient to establish that the PFAS are widespread throughout TCP's school uniform products: PFAS allegedly were present in 30 of the 34 unopened products that class counsel purchased. In addition, the alleged "misrepresentation"—in this case, an omission—is the same for all products: the plaintiffs allege that TCP completely failed to disclose the presence of PFAS. Thus, even the majority of courts that have considered this as an issue regarding standing have found that standing is secure under similar circumstances.

### 3. Nationwide class claims

TCP next argues that the plaintiffs lack standing to bring claims where they did not reside or purchase products. Because Garland is an Illinois resident who purchased the products in Illinois and Saldana is a Florida resident who purchased the products in Florida, TCP argues that "they cannot represent a nationwide class because they do not have an injury in fact in the other jurisdictions." Def.'s Mot. to Dismiss at 8. Again, the

Court views this as a challenge to the plaintiffs' "'ability under Rule 23 to represent the multi-state class'—a question best left for class certification—rather than a question of standing." *Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL 3895565, at *4 (N.D. Ill. Sept. 6, 2017) (Kennelly, J.) (quoting *Halperin v. Int'l Web Servs.*, LLC, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015)); *see also, e.g.*, *Batton v. Nat'l Ass'n of Realtors*, No. 21 C 430, 2024 WL 689989, at *4 (N.D. Ill. Feb. 20, 2024); *Bonahoom v. Staples, Inc.*, No. 20 C 1942, 2021 WL 1020986, at *3 (N.D. Ill. March 17, 2021); *Alea v. Wilson Sporting Goods Co.*, No. 17 C 498, 2017 WL 5152344, at *6 (N.D. Ill. Nov. 7, 2017); *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1000 (N.D. Ill. 2017). As the Seventh Circuit has explained, the "application of choice-of-law principles" involved in determining whether any named or unnamed class member can state a claim under a particular state's laws "has nothing to do with *standing*, though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be." *Morrison v. YTB Int'l., Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

### 4. Injunctive relief

Finally, TCP argues that the plaintiffs do not have standing to pursue injunctive relief because they are now aware of the alleged PFAS contamination in the school uniform products. The plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC*, 594 U.S. at 431. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414

U.S. 488, 495–96 (1974).  Because the plaintiffs are "now aware of [TCP's] sales practices," they are "not likely to be harmed by the practices in the future."  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014); *see also Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017) (ruling that a plaintiff lacked standing to pursue injunctive relief for an ICFA deceptive practices claim because "he [was] fully aware of the fact that [the alleged therapeutic remedy at issue] [was] nothing but sugar water").

The plaintiffs analogize their allegations to those of the plaintiff who sought an injunction for violations of the Americans with Disabilities Act (ADA) in *Scherr v. Marriott International*, 703 F.3d 1069 (7th Cir. 2013).  In that case, the Seventh Circuit held that the plaintiff had standing to seek injunctive relief against the defendant hotel because she alleged that she would stay in the hotel again but for its ADA violations.  *Id.* at 1074–75.  The plaintiffs argue that, similarly, they "would again purchase the School Uniforms if they did not contain PFAS."  Pls.' Resp. at 8.  But, unlike the defendant in *Scherr*, which had a statutory obligation to comply with the ADA, TCP has no state or federal obligation to sell PFAS-free clothing.  In other words, any injunctive relief in this case would require only that TCP stop misrepresenting its products, not that it manufacture them in a manner that the plaintiffs prefer.  As discussed, because the plaintiffs are now aware of the risk of PFAS contamination, there is no "'real and immediate' threat" that they will be harmed again by TCP's failure to disclose that fact. *Scherr*, 703 F.3d at 1074 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). The plaintiffs therefore lack standing to pursue injunctive relief.

**B.      Failure to state a claim**

To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor."  *Id.*

**1.      ICFA**

TCP first argues that the plaintiffs fail to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/2.  "In order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'"  *Camasta*, 761 F.3d at 739 (quoting *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012)).  A plaintiff also must show that "he suffered 'actual damage' as a result of the defendant's violation of the act."  *Id.* (quoting 815 ILCS 505/10a).  "The statute allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both)."  *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).  The plaintiffs here allege that TCP's actions were both deceptive and unfair.

**a.      Deceptive acts**

Under ICFA, "a practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive'" from the perspective of a "reasonable consumer."  *Id.* (quoting

11

*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)).  Deceptive practices claims may be based on a defendant's affirmative lies or misrepresentations as well as a defendant's omission or concealment of material facts.  *De Bouse v. Bayer*, 235 Ill. 2d 544, 554, 922 N.E.2d 309, 316 (2009).  Either way, "the plaintiff must actually be deceived by a statement or omission that is made by the defendant.  If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause."  *De Bouse*, 235 Ill. 2d at 554, 922 N.E.2d at 316.

The plaintiffs allege that they viewed TCP's advertisements, its retail website, and the tags on the school uniform products that they purchased.  But they do not contend that these sources contained any false statements.  In other words, the plaintiffs have not alleged that TCP's advertisements, retail website, or clothing tags affirmatively stated that its school uniform products were PFAS-free.

Nor have the plaintiffs alleged that they encountered any statements by TCP that were misleading or "half-truths" as a result of TCP's failure to mention PFAS.  *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶ 33, 40 N.E.3d 264, 276 ("A statement that is technically true may nevertheless be fraudulent where it omits qualifying material since a 'half-truth' is sometimes more misleading than an outright lie." (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 762, 814 N.E.2d 960, 969 (2004)).  Although the plaintiffs point to alleged "half-truths" in TCP's 2021 ESG Report and on its corporate website, they cannot premise their ICFA claims on these statements because they did not read or otherwise become aware of either statement before making their purchases.  *See Barbara's Sales, Inc. v. Intel Corp.*, 227

12

Ill. 2d 45, 76, 879 N.E.2d 910, 927 (2007) (stating that the defendant's statements were "not actionable" under ICFA because "no plaintiff was aware of these statements").

Because they cannot point to any outright false statement or misleading half-truth, the plaintiffs instead premise their claims on TCP's general nondisclosure of the presence of PFAS in its school uniform products. Some courts have held that allegations of "a general failure to disclose" are insufficient to state a claim for deception under ICFA. *See Darne v. Ford Motor Co.*, No. 13 C 3594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017); *Fleury v. Gen. Motors LLC*, 654 F. Supp. 3d 724, 732 (N.D. Ill. 2023) (same). But even if the Court were to accept the plaintiffs' contention that general nondisclosure of a material fact can suffice to state a deception claim, the Court cannot see how TCP's nondisclosure "creates a likelihood of deception or has the capacity to deceive" under these circumstances. *Benson*, 944 F.3d at 646. The Seventh Circuit has emphasized that, when evaluating whether a defendant's conduct is deceptive, a court "should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020); *see also Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 44, 19 N.E.3d 1019, 1031 ("[W]e note that the analysis must consider whether the act was deceptive as reasonably understood in light of *all the information* available to plaintiffs."); *Ambrosius v. Chi. Athletic Clubs, LLC*, 2021 IL App (1st) 200893, ¶ 23, 203 N.E.3d 239, 249 (same). In addition, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477.

Based on the context and available information as pleaded in the complaint, the

Court concludes the plaintiffs have not plausibly alleged that TCP's silence regarding the presence of PFAS in its clothing deceives consumers into believing its school uniform products are PFAS-free.  The plaintiffs allege that "[s]hort-chain PFAS chemicals are currently used in the textile and apparel industry."  Am. Compl.  ¶ 70.  An article attached as an exhibit to the complaint further explains that PFAS "are often added to consumer products, including those used by children and adolescents."  Am. Compl., Ex. 1 at 1.  Furthermore, the plaintiffs do not dispute TCP's assertion that "at no time has PFAS in textiles been subject to regulation by any Federal or State agency."  Def.'s Mot. to Dismiss at 3.[2]  In addition, the plaintiffs allege that research discussing the presence "of PFAS in school uniforms available throughout the United States and Canada was . . . widely published via various mainstream media outlets."  Am. Compl. ¶ 76.  Indeed, the plaintiffs contend that this information was so widely available that it should have "put [TCP] on notice of the possibility of PFAS in its School Uniform products," even though its products were not tested in the cited research.  *Id.* ¶ 77. Lastly, the complaint suggests that companies selling PFAS-free clothing are the exception rather than the norm.  For example, the plaintiffs point to North Face and Patagonia as companies that "have committed to phasing [PFAS] out of their products completely."  *Id.* ¶ 74.  But the article that the plaintiffs cite for this proposition clarifies that, even among these leaders in phasing out PFAS, "significant chunks of their respective lines are still made with the stuff."  Daniel Penny, *Is Your Beloved Outdoors Gear Bad for the Planet?*, GQ (Jan. 22, 2021), https://www.gq.com/story/outdoor-gear-

---

[2] At oral argument, the Court asked TCP whether any federal or state regulation applied to the chemicals at issue.  TCP stated that there were not.  The plaintiffs did not dispute this.

14

pfas-study (cited in Am. Compl. ¶ 74 n. 22).

In sum, the plaintiffs allege that TCP used chemicals that are legally and commonly used in apparel—including in U.S. children's school uniforms specifically—and that these facts were widely published in the mainstream media. In this context, it is not plausible that a reasonable consumer would interpret TCP's silence on the issue of PFAS to indicate that its school uniforms were 100 percent PFAS-free. The fact that TCP could have provided "more detailed" or "more specific" information regarding the chemicals in its products is insufficient, without more, to state an ICFA deception claim for omission of a material fact. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017) (quoting *Phillips*, 2014 IL App (1st) 122817l, ¶ 40, 19 N.E.3d at 1030). In sum, the plaintiffs have not plausibly alleged that TCP deceived them into purchasing its school uniform products.

### b. Unfair acts

"Illinois courts look to three considerations to ascertain whether conduct is unfair under the ICFA: '(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers.'" *Benson*, 944 F.3d at 647 (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18, 775 N.E.2d 951, 961 (2002)). "A court may find unfairness even if the claim does not satisfy all three criteria." *Id.* "A practice might be unfair 'because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.' *Id.* (quoting *Robinson*, 201 Ill. 2d at 417–18, 775 N.E.2d at 961).

With respect to the first factor, as the Court has already discussed, the plaintiffs do not point to any regulation or policy that prohibits TCP's use of the chemicals at issue

in its school uniform products.  Moreover, the plaintiffs' brief in opposition to TCP's motion to dismiss does not discuss the first unfairness factor.  The Court therefore concludes that, on the present record at least, TCP's alleged conduct does not "offend[ ] public policy." *Benson*, 944 F.3d at 647.

Turning to the second factor, the Court concludes that the plaintiffs have not plausibly alleged that TCP's actions were "immoral, unethical, oppressive, or unscrupulous." *Id.*  This standard generally requires the defendant's conduct to "be so oppressive as to leave the consumer with little alternative except to submit." *Robinson*, 201 Ill. 2d at 421, 775 N.E.2d at 963; *see also Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 833 (7th Cir. 2014).  As the Court has just concluded, the plaintiffs have not alleged that TCP lied about or misrepresented the fact that its products contained PFAS.  They therefore cannot argue that TCP's misrepresentations essentially deprived them of their ability to shop around (or were otherwise immoral, unethical, oppressive, or unscrupulous).

To the extent that the plaintiffs intend to argue that the mere allegation that TCP's school uniforms contained PFAS is sufficient to meet this standard irrespective of any misrepresentation, the Court disagrees.  TCP's use of chemicals that are commonly and legally used in textiles, without more, does not meet this standard under the facts as plead.  If the plaintiffs' theory were correct, then every company that has sold items containing PFAS would be liable for unfair practices.

Lastly, the Court concludes that the plaintiffs have not plausibly alleged that the financial injury they suffered by purchasing TCP's products is substantial under the ICFA.  This third criterion is satisfied "only if the injury is (1) substantial; (2) not

outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Batson*, 746 F.3d at 834. Again, given that there was no misrepresentation, the plaintiffs have not alleged facts that would permit a jury to conclude that they could not shop around and/or fairly evaluate whether they were willing to pay the retail price of TCP's school uniform products. Therefore, there is no allegation that consumers "could not reasonably have avoided" the alleged injury. *Id.* The Court also notes that although the Illinois Supreme Court has explained that a plaintiff need not meet all three criteria to allege an unfair practices claim, *see Robinson*, 201 Ill. 2d at 417–18, 775 N.E.2d at 961, the Court is not aware of any court that has concluded that a plaintiff has stated a claim based on the substantial-injury factor alone.

### 2. FDUTPA

The plaintiffs' claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201–213, are insufficient for the same reasons the Court has discussed with respect to ICFA. To state a FDUTPA claim, a plaintiff "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). "Deception" includes an "omission . . . likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). As the Court has explained, the plaintiffs have not plausibly alleged that a reasonable consumer would understand TCP's silence to mean that its school uniforms were PFAS-free. Under the FDUTPA, "[a]n unfair practice is one that offends established public policy and one that is immoral, unethical,

oppressive, unscrupulous or substantially injurious to consumers." *Id.* (internal quotations and citations omitted). As the Court has explained, the plaintiffs have not plausibly alleged that TCP's conduct violates any public policy or that it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. The plaintiffs therefore have not stated a claim under the FDUTPA.

### 3. Fraudulent concealment

TCP argues that the plaintiffs have not stated a claim for fraudulent concealment because they have not alleged that TCP had a duty to disclose. Def.'s Mot. to Dismiss at 13. To state a claim for fraudulent concealment under Illinois law, "a plaintiff must establish that (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Phillips*, 2014 IL App (1st) 122817, ¶ 82, 19 N.E.3d 1019, 1037. To state a claim for fraudulent concealment under Florida law, a plaintiff must establish that "(1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew its concealment of the fact would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) the plaintiff relied on the misrepresentation to his or her detriment." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017).

18

"The duty to disclose arises only in certain situations, including where the 'plaintiff and defendant are in a fiduciary or confidential relationship' and 'where plaintiff places trust and confidence in defendant thereby placing defendant in a position of influence and superiority over plaintiff.'" *Fleury*, 654 F. Supp. 3d at 735 (quoting *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018)); *accord Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D. Fla. 2021) (applying Florida law).

The plaintiffs do not dispute that no fiduciary relationship or other special relationship exists here. Rather, they argue that there are additional circumstances under in which a duty to disclose arises under Florida and Illinois law.

First, the plaintiffs assert that "under Illinois law . . . in situations where (i) a defendant's acts contribute to plaintiff's misapprehension of a material fact and defendant fails to correct it or (ii) the defendant's silence is accompanied by deceptive conduct." Pls.' Resp. at 15 (internal quotations and citation omitted). The Court has already explained, however, that the plaintiffs have not plausibly alleged that TCP made any misrepresentations by omission or that its silence was otherwise deceptive. The plaintiffs therefore have not alleged that TCP had a duty to disclose the presence of PFAS in its school uniform products under Illinois law.

Second, the plaintiffs assert that a duty to disclose all material facts exists under Florida law "when a party to a transaction undertakes to disclose information." Pls.' Resp. at 14 (quoting *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003)). As the Court has explained, the plaintiffs have not adequately pleaded that they encountered any partial disclosures that were misleading

19

due to TCP's failure to disclose the presence of PFAS. *See Friedman*, 837 So. 2d at 1166 (dismissing a fraudulent concealment claim where the complaint did not allege that the statement at issue was "obfuscatory in nature or amounted to a partial disclosure").

Finally, the plaintiffs argue that Florida law recognizes a duty to disclose "where one party 'does not have [an] equal opportunity to become apprised of the fact.'" Pls.' Resp. at 14 (quoting *Identity Stronghold LLC v. Zeidner*, No. 16 C 868, 2019 WL 12338322, at *12 (M.D. Fla. Sept. 11, 2019)). The Court notes that Florida courts rarely seem to invoke this exception. But even assuming it is good law, the Court agrees with TCP that the plaintiffs have not alleged that information about PFAS was exclusively available to TCP. To the contrary, they allege that TCP "knew or should have known of the presence of PFAS in its School Uniforms by at least June 27, 2022 as the result of the scientific literature and media reports." Am. Compl. ¶ 112. There is no indication that the "scientific literature and media reports" were not equally available to the plaintiffs. At any rate, even accepting as true the plaintiffs' contention that TCP had a better opportunity to become apprised of the presence of PFAS in its school uniform products, the plaintiffs still do not state a claim for fraudulent concealment. For example, the plaintiffs have not alleged any facts that plausibly suggest that TCP knew or intended that its silence regarding PFAS would "induce" the plaintiffs' belief that their school uniforms were PFAS-free. *Koski*, 347 F. Supp. 3d at 1196. In sum, the plaintiffs have failed to state a claim for fraudulent concealment under both Illinois and Florida

law.[3]

### 4. Unjust enrichment

The plaintiffs' unjust enrichment claims appear to be based on the same theory of wrongdoing as their ICFA, FDUTPA, and fraudulent concealment claims. The plaintiffs do not, for example, allege that it was illegal for TCP to sell school uniforms containing PFAS (absent any misrepresentation) or that their children were harmed as a result of wearing the school uniforms. The Seventh Circuit has explained that, under Illinois law, when "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

Courts applying Florida law also routinely dismiss unjust enrichment claims that are based on the same allegations as a plaintiff's FDUTPA or common law tort claims. *See, e.g.*, *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1235 (S.D. Fla. 2021) ("[U]njust enrichment claims are unavailable where they are based, as here, on

---

[3] The Court need not address the plaintiffs' cursory and unsupported assertion that, because they have brought this case as a putative nationwide class action, TCP must show that the plaintiffs have failed to state a fraudulent concealment claim under the law of all 50 states. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (stating that "perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived" (internal quotations and citation omitted)).

precisely the same allegedly deceptive conduct that forms the basis of a FDUTPA claim."); *Pop v. LuliFama.com LLC*, No. 22 C 2698, 2024 WL 1194485, at *6 (M.D. Fla. Mar. 20, 2024); *State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266–67 (M.D. Fla. 2021); *Koski*, 347 F. Supp. at 1185; *Electrostim Med. Servs., Inc. v. Lindsey*, No. 11-cv-2467, 2012 WL 1560647, at *4 (M.D. Fla. May 2, 2012). Because the plaintiffs' unjust enrichment claim "rests on the same improper conduct" as their ICFA, FDUTPA, and fraudulent concealment claims, the Court concludes that the plaintiffs have failed to state a claim for unjust enrichment. *Cleary*, 656 F.3d at 517.

### Conclusion

For these reasons, the Court grants TCP's Rule 12(b)(1) motion with respect to the plaintiffs' request for injunctive relief, but otherwise denies the motion. The Court grants TCP's motion to dismiss the plaintiffs' complaint under Rule 12(b)(6). Unless the plaintiffs file, by April 23, 2024, a motion for leave to amend with a proposed amended complaint including at least one viable claim over which the Court has jurisdiction, the Court will enter judgment against them. The case is set for a telephonic status hearing on April 30, 2024 at 8:50 a.m., using call-in number 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 1, 2024

22